UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PABLO GOMEZ, | ) | 1:09-cv-00100 LJO JMD (HC) |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| | ) | |
| CALIFORNIA BOARD OF PAROLE | ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| HEARINGS, | ) | DAYS |
| | ) | |
| Respondent. | ) | |

Petitioner Pablo Gomez ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1990 conviction for second-degree murder. Petitioner was sentenced to an indeterminate term of fifteen years to life in prison.

Petitioner is not challenging his conviction in this instant action. Rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), which he appeared before on June 4, 2007. Petitioner contends that the Board violated his constitutional rights by denying him parole.

On October 23, 2007, Petitioner filed a petition for writ of habeas corpus with the Orange County Superior Court alleging that the Board's denial of parole violated his constitutional rights. The petition was denied in a reasoned decision on November 14, 2007.

Petitioner filed petitions for writ of habeas corpus with the California Court of Appeal and

the California Supreme Court. Both petitions were summarily denied.

Petitioner filed the instant petition for writ of habeas corpus on September 17, 2008. Respondent filed an answer to the petition on June 23, 2009, to which Petitioner filed a traverse on July 7, 2009.

## **FACTUAL BACKGROUND**

### **I.   The Commitment Offense**[1]

On December 17, 1989, Antonio Barrera, Aristeo Ramos, Antonio Chino, and Gilberto Pineda (collectively referred to as the Barrera group) were at a house party in Anaheim. While at the party, an altercation occurred between Chino and Manuel Pompa, a friend of Petitioner's. After the altercation the Barrera group decided to leave the party.

As the Barrera group went outside, Barrera and Ramos saw a person, later found to be Pompa, breaking into their car with a crowbar. Pompa ran to a second car containing Luis Seda and Petitioner. Pompa gave the crow bar to Petitioner and got in the car with Seda. Petitioner approached the Barrera group wielding the crowbar in one hand and a knife in the other. Petitioner tore Chino's sweater, cut Ramos on the chest, and fatally stabbed Pineda.

### **II.   Pre-Conviction Facts**[2]

Petitioner has no juvenile record, nor does he have any prior adult felony convictions. Petitioner was arrested in 1983 for assault with a deadly weapon but the charges were dropped for lack of probable cause and evidence. Petitioner was also cited for driving on a suspended license in 1985 for which he received three years probation.

Petitioner was twenty-five or twenty-six years old when he committed the offense. At the time he was working in auto detailing and selling cars. Petitioner had been working on cars "ever since [he] can remember."

Petitioner's parents live in Visalia with his two younger brothers. Petitioner's sister lives in

---

[1] The facts of the commitment offense are derived from the transcript of the Board of Parole Hearings June 4, 2007, hearing in consideration of Petitioner's parole. (Answer, Ex. 4, Tr. Board of Parole Hr'gs (hereinafter Tr.), 12-16, June 4, 2007.)

[2] (Tr. 16-27.)

Hanford and the rest of his family lives in Los Angeles.

Petitioner has three children and one step child, all of whom live with his ex-wife, Michelle Herrera, in Denver, Colorado.

### III.   Post-Conviction Facts[3]

Petitioner finished a computer repair certification in 2000 and electronic technician certification in 2004.  Petitioner is currently in a janitorial program. Petitioner also completed tech 101 and workplace safety for food service employees.  Petitioner participated in the vocation auto mechanic program from September 3, 1994, through February 8, 1995, but was not able to finish the course because he was transferred.

Petitioner completed his GED on December 8, 1997.

Petitioner has participated in several self-help programs.  He completed creative conflict resolution on May 12, 2006, the impact six-month program on July 11, 2006, and the life skills communication course on July 31, 2006.  Petitioner also completed the everyday math course one and two.  Petitioner participates in the lifers' support group though which he has taken classes such as victim awareness and breaking barriers.  Petitioner holds an eight year participation certificate from Alcoholics Anonymous and is still regularly attending meetings on a weekly basis.

Petitioner currently has an Orange County D.A. Family Support hold as well as an I.N.S. hold, requiring Petitioner's deportation when released from prison, placed on him.

Petitioner has one 115[4] on January 19, 2002, for excessive contact when a female visitor put her hand inside Petitioner's pants.

Petitioner has seven 128[5] counseling chronos, the latest of which was February 14, 1997, for being absent from his assigned classroom.

---

[3] (Tr. 27-42.)

[4] A CDC 115 documents misconduct believed to be a violation of law or otherwise not minor in nature. See Cal.Code Regs., tit. 15, § 3312(a)(3); In re Gray,151 Cal.App.4th at 389.

[5] A CDC 128 documents incidents of minor misconduct. See Cal.Code Regs., tit. 15, § 3312(a)(2); In re Gray, 151 Cal.App.4th 379, 389 (2007).

## IV. Post-Commitment Plans[6]

Petitioner has an I.N.S. hold, which means he will be deported to Mexico when released from prison.

Petitioner testified that he plans to move to Jalisco, Mexico, where he would like to open his own computer repair business. Petitioner plans to live with a friend, Jose Delgado, in Jalisco. Jose Delgado sent a letter on June 28, 2006, stating his support for Petitioner's release and offering him a place to live and a job as a sales associate in his furniture factory. Jose Delgado's letter also indicated that he plans on helping Petitioner open his computer repair business as an equal partner. Petitioner also received a letter of support from Jose Delgado Sanchez, Jose Delgado's father, who offered to help Petitioner in much the same way as his son.

Petitioner received further letters of support from several family members, all of whom pledged to give Petitioner monetary and emotional support. Petitioner's parents have also offered to live with him in Mexico while he readjusts.

## V. Psychological Evaluation[7]

Dr. Starrett found that Petitioner has had a positive response to treatment, that he does not have a negative attitude, and that he is no longer impulsive. Dr. Starrett further found "[t]hat [Petitioner] would rate in the low range in terms of his risk management in the future. In summary, this individual overall appears to rate in the low range in his propensity to commit violence when compared to similar violent inmates." Dr. Starrett recommended that Petitioner remain discipline free and continue to program positively. "It is recommended that [Petitioner] be involved . . . in NA/AA, and recommends that he be continuously involved in self-help groups."

## VI The Board's Decision[8]

The Board ultimately found Petitioner unsuitable for parole because he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison and denied

---

[6] (Tr. 44-62)

[7] (Tr. 42-44.)

[8] (Tr. 79-83.)

1  parole for one year.  The Board found that Petitioner was an unreasonable risk of danger to society
2  because the commitment offense was carried out in an "especially cruel and very callous manner . . .
3  which obviously demonstrates an exceptionally callous disregard for human life or human suffering
4  and the motive for the crime is trivial in relation to the offense."  The Board further found that
5  Petitioner has previous arrests in county jail and has been placed on probation and that he would
6  benefit from continued participation in "self-help concerning the disciplinary history that he has
7  obtained since incarceration."

8        The Board also noted that while Dr. Starrett's psychological evaluation was overall
9  supportive of release, the Board was uncomfortable with the phrase "when compared to similar
10 violent inmates."  The Board requested a new psychological evaluation to clarify that statement.

**DISCUSSION**

**I.      Jurisdiction**

13       A person in custody pursuant to the judgment of a State court may petition a district court for
14 relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or
15 treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529
16 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by
17 the United States Constitution and Petitioner is currently incarcerated at Coalinga State Prison,
18 which is located in Fresno County.  As Fresno County falls within this judicial district, 28 U.S.C. §
19 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus.  See 28
20 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the
21 district court where the petitioner is currently in custody or the district court in which a State court
22 convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.     ADEPA Standard of Review**

24       On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of
25 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's
26 enactment.  Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499
27 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other*
28 *grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's

enactment)). The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA. See Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), *overruled in part on other grounds*, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, Hayward, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant

1  state court decision applied clearly established federal law erroneously or incorrectly. Rather, that
2  application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable
3  application" inquiry should ask whether the state court's application of clearly established federal law
4  was "objectively unreasonable." Id. at 409.

5  Petitioner bears the burden of establishing that the state court's decision is contrary to or
6  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,
7  94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,
8  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court
9  decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While
10 *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents
11 need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v.
12 Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can
13 no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit
14 precedent on a federal Constitutional issue . . . This does not mean that Ninth Circuit caselaw is
15 never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of
16 determining whether a particular state court decision is an 'unreasonable application' of Supreme
17 Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the
18 AEDPA requires that the Court give considerable deference to state court decisions. The state
19 court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is
20 bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.
21 2002).

22 The initial step in applying AEDPA's standards is to "identify the state court decision that is
23 appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more
24 than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last
25 reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption
26 that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same
27 ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained
28 state court decisions to the last reasoned decision to determine whether that decision was contrary to

or an unreasonable application of clearly established federal law. Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Orange County Superior Court, the California Court of Appeal, and the California Supreme Court reached the merits of Petitioner's claims. As the California Court of Appeal and the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the Orange County Superior Court. See Ylst v. Nunnemaker, 501 U.S. at 804.

### III.     Review of Petitioner's Claims

In his petition for writ of habeas corpus, Petitioner sets forth four grounds for relief: (1) the Board violated Petitioner's due process rights by denying him parole; (2) the Board's denial of parole violates constitutional ex post facto laws; (3) the superior court's utilization of only the commitment offense to uphold the Board's denial of parole violated due process; and (4) the superior court violated the California "some evidence" rule by upholding the Board's denial of parole.

**Grounds One, Three, and Four**

Petitioner makes three different due process claims, two of which focus on the superior court's decision upholding the Board's decision, and one of which focuses on the Board's decision itself. As the federal habeas court has but one analysis for due process in the context of parole decisions, the Court will examine these three claims as one.

The Court analyzes a due process claim in two steps. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." Hayward, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." Id. at 559. The Hayward court's finding that there exists no free standing federal due process right to parole, or the

right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As later noted by the Ninth Circuit, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). The Pearson court found that, "Hayward necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established. Id.

As noted by the Ninth Circuit in Hayward, the logical next question is whether California's parole scheme gives rise to a liberty interested enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." Pearson, 606 F.3d at 611 (citing Hayward, 603 F.3d at 562); see also Cooke v. Solis, 606 F.3d, 1206, 1213-14 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state").

Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted). As the Ninth Circuit recently observed in Cooke:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole," [citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

Cooke, 606 F.3d at 1214 (quoting In re Lawrence, 44 Cal.4th 1181, 1210, 1213 (2008)); see also Cal. Code Regs., tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable

and denied parole). The California Supreme Court in Lawrence held that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." Id. at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability"). Thus, the dispositive inquiry now before this Court is "'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke, 606 F.3d at 1214 (quoting In re Lawrence, 44 Cal.4th at 1221) (emphasis in original).

*Superior Court Decision*

Here, the State superior court based its decision on In re Dannenberg, 35 Cal.4th 1061 (2005) in holding that "if the [Board] determines the gravity of the commitment offense 'is such that consideration of the public safety requires a more lengthy period of incarceration,' it may deny parole without proceeding to consider and analyze the other suitability factors such as prison behavior and parole plans." (Op. Superior Ct., Nov. 14, 2007.) Dannenberg set forth the "minimum elements" test which allows the Board to find unsuitability "by pointing to some evidence that the particular circumstances of [Petitioner's] crime–circumstances beyond the minimum elements of his conviction–indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remain[s] a danger to public safety." Dannenberg, 34 Cal. 4th at 1098. The State court applied the minimum effects test in finding:

> the [Board] stated it came to its conclusion "first by the commitment offense." It pointed to factors "beyond the minimum elements of the crime" in that the death of a young man resulted from a fight at a party where Petitioner armed himself with a knife and was an instigator in the fray. (Citation omitted.) Thus the [Board] did not need to engage in a further analysis. (Citation omitted.) Nevertheless it did, noting that Petitioner had a "disciplinary" for excessive contact and seven "counseling chronos." Additionally, the [Board] was not quite "comfortable" with the psychological assessment and requested a new one. Thus, the [Board's] conclusion was supported by "some evidence" which is all that is required. (Citation omitted.) The petition is denied on that basis.

(Op. Superior Court, Nov. 14, 2007.)

The State court's decision in this case is an unreasonable application of the California "some

evidence" standard because Lawrence clearly "discarded the minimum elements test, expressing its realization that 'the minimum elements inquiry is unworkable in practice' since 'there are few, if any, murders that could *not* be characterized as either particularly aggravated, or as involving some act beyond the minimum required for conviction of the offense.'" In re Lazor, 172 Cal. App. 4th 1185, 1197 (Cal. Ct. App., 2009) (emphasis in original) (quoting Lawrence, 44 Cal. 4th at 1218). Even though the State court notes that there exists evidence outside the commitment offense on which the Board relied in denying parole– Petitioner's 115 for excessive contact, seven 128's, and the fact that the Board was "not comfortable" with the psychological assessment– its finding that the commitment offense alone constituted "some evidence" of risk is an unreasonable application of the California "some evidence" standard.

*Parole Board's Decision*

The finding that the State court's decision was objectively unreasonable does not end a federal habeas court's inquiry. See Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3)). A federal habeas court's "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws . . . of the United States.'" Id. Thus, Petitioner is only entitled to habeas corpus relief if his due process rights were violated by the lack of evidence to support the Board's denial of parole.

The Board found the following factors as evidence of Petitioner's current dangerousness: 1) The circumstances of the commitment offense; 2) Petitioner's criminal history that consists of numerous violations for driving on a suspended license, previous county jail incarceration, and probation; 3) Petitioner's prison disciplinary history that consists of one 115 in 2002 for excessive contact and seven 128's; 4) Petitioner has not "sufficiently participated in beneficial self-help concerning his prison disciplinary history;" and 5) Petitioner's psychological evaluation, while favorable of release, intimated that Petitioner could be a violent inmate by stating that "this individual overall appears to rate in the low range in his propensity to commit violence when compared to similar violent inmates."

The Court finds "some evidence" of current dangerousness only in the psychological evaluation's comparison of Petitioner to "similar violent inmates." "The 'some evidence' standard is

extremely deferential" and "[r]esolution of any conflicts in the evidence and the weight to be given the evidence are within the authority of the Board." Lazor, 172 Cal. App. 4th at 1198 (citing In re Rosenkrantz, 29 Cal. 4th, 616, 656, 665 (2002). The "deferential 'some evidence' standard of review requires only a 'modicum of evidence' of unsuitability for parole," Lazor, 172 Cal. App. 4th at 1198 (quoting Lawrence, 44 Cal. 4th at 1226), and the federal habeas court "may not substitute its judgment for the Board's merely because it would weigh the evidence differently, Lazor, 172 Cal. App. 4th at 1199. As such, the Court will not question the Board's discomfort with the psychological evaluation's allusion to Petitioner being a "violent inmate." The Board did not blindly rely on this assessment as pretext for denying parole, instead it actually sought to fix any unintended miscommunication by ordering a new report and denying parole for only one year. However, it was reasonable for the Board to take pause when confronted with a statement such as "when compared to similar violent inmates," in a psychological evaluation when trying to determine whether an inmate poses a current risk of danger to society. As the psychological evaluation constitutes "some evidence" on which the Board could rely to find that Petitioner poses a current risk of danger to society, Petitioner's due process rights were not violated when the Board denied him parole.

**Ground Two**

Petitioner claims that the Superior Court's application of Dannenberg in upholding the Board's denial of parole violated constitutional protections against ex post facto laws.

The Ex Post Facto Clause of the United States Constitution prohibits the states from enacting a law which, by retroactive operation, increases the punishment for a crime after its commission. U.S. Const., Art. I § 10; E.g. Garner v. Jones, 529 U.S. 244, 249-50 (2000) (citing Collins v. Youngblood, 497 U.S. 37, 42 (1990)). Even facially neutral laws that are procedural in nature may violate the Ex Post Facto Clause. See, e.g., id. ("not every retroactive procedural change creating a risk of affecting an inmates terms or conditions of confinement is prohibited"); see also Collins, 497 U.S. at 46 ("labeling a law 'procedural'...does not thereby immunize it from scrutiny under the Ex Post Facto Clause"). Although the Latin phrase "ex post facto" literally encompasses any law passed "after the fact," the Supreme Court has long recognized that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them. Collins,

497 U.S. at 41 (citing Calder v. Bull, 3 U.S. 386, 390-392, (1798). The notion that a retroactive law that increases the penalty imposed for a crime violates the Ex Post Facto Clause is clearly established federal law for the purposes of 28 U.S.C. § 2254. See, e.g., Williams v. Roe, 421 F.3d 883, 887 n.1 (9th Cir. 2005).

Retroactive changes to a state's parole laws, in some instances, may be violative of the Ex Post Facto Clause. Garner, 529 U.S. at 250 (citing Lynce v. Mathis, 519 U.S. 433, 445-46 (1925)). However, in this case Petitioner is arguing that case law is being applied in a manner which would increase his incarceration thereby violating ex post facto sensibilities. As ex post facto protections only apply to statutory law, Petitioner's contention that the Superior Court's application of Dannenberg was violative of the Ex Post Facto Clause is erroneous. Thus, Petitioner cannot receive relief as to Ground Two.

**CONCLUSION**

The State court's finding that the Board's denial of parole was supported by "some evidence" was not an unreasonable application of the California "some evidence" standard. Thus, Petitioner cannot be granted habeas relief.

**RECOMMENDATION**

Accordingly, in accordance with the above, IT IS HEREBY RECOMMEND that:

1. The petition for writ of habeas corpus be DENIED and
2. The Clerk of Court be directed to enter judgement for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The

1  parties are advised that failure to file objections within the specified time may waive the right to
2  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  IT IS SO ORDERED.
4  **Dated:   July 19, 2010**              **/s/ John M. Dixon**
                                            UNITED STATES MAGISTRATE JUDGE